**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ANDUJAR MILLER and RASOUL NICHOLSON, Individually and For Others Similarly Situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>LEIDOS, INC.,<br><br>　　　　　　Defendant. | **Case No. 1:24-cv-931**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.　　　Andujar "AJ" Miller ("Miller") and Rasoul Nicholson ("Nicholson") bring this collective action to recover unpaid wages and other damages from Leidos, Inc. ("Leidos").

2.　　　Leidos employed Miller and Nicholson as its Straight Time Employees (defined below).

3.　　　Leidos pays Miller, Nicholson, and its other Straight Time Employees by the hour.

4.　　　Miller, Nicholson, and the other Straight Time Employees regularly work more than 40 hours a workweek.

5.　　　But Leidos does not pay them overtime wages.

6.　　　Instead, Leidos pays Miller, Nicholson, and its other Straight Time Employees the same hourly rate for all hours worked, including those hours worked in excess of 40 a workweek (a practice known as "straight time for overtime").

7.　　　Indeed, Leidos uniformly misclassifies Miller, Nicholson, and its other Straight Time Employees as independent contractors to avoid paying them overtime.

8.      But Leidos knows the Straight Time Employees are its hourly employees.

9.      And Leidos has never paid Miller, Nicholson, and its other Straight Time Employees on a "salary basis" as required for any relevant overtime exemption Leidos might claim with respect to these employees.

10.     Leidos uniformly applies its illegal straight time for overtime pay scheme to Miller, Nicholson, and its other Straight Time Employees regardless of any individualized differences.

11.     Leidos's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Miller, Nicholson, and the other Straight Time Employees of the "time and a half" overtime premium they are owed for hours worked in excess of 40 in a workweek.

### JURISDICTION & VENUE

12.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.     This Court has general personal jurisdiction over Leidos because Leidos is headquartered in Reston, Virginia.

14.     Venue is proper because Leidos resides in this District and Division. 28 U.S.C. § 1391(b)(1).

15.     Specifically, Leidos is headquartered in Reston, Virginia, which is in this District and Division.

### PARTIES

16.     Miller worked for Leidos as a Deployment Trainer from approximately June 2020 until December 2023.

17.     Miller worked for Leidos in Virginia during approximately March and April 2023.

18.     Throughout his employment, including while working in Virigina, Leidos paid Miller straight time for overtime.

19.     Nicholson worked for Leidos as a Training Specialist II from approximately March 2022 until December 2023.

20.     Nicholson worked for Leidos in Virginia for approximately 2 months.

21.     Throughout his employment, including while working in Virginia, Leidos uniformly paid Miller straight time for overtime.

22.     Throughout his employment, Leidos uniformly paid Nicholson straight time for overtime.

23.     Miller's written consent is attached as **Exhibit 1**.

24.     Nicholson's written consent is attached as **Exhibit 2.**

25.     Miller and Nicholson bring this collective action on behalf of themselves and all other similarly situated Leidos employees who Leidos paid under its illegal straight time for overtime pay scheme.

26.     Leidos misclassified these employees as independent contractors to avoid paying them overtime wages.

27.     Leidos pays each of these employees the same hourly rate for all hours worked, including those hours worked in excess of 40 a workweek, in willful violation of the FLSA.

28.     The FLSA Collective of similarly situated employees is defined as:

> **All individuals who worked for or on behalf of Leidos in the United States who were paid straight time for overtime at any time during the past 3 years ("Straight Time Employees").**

29.     Leidos is a Delaware corporation headquartered in Reston, Virginia.

30.     Leidos is registered to do business in Virginia.

31.     Leidos can be served through its registered agent: **C T Corporation System, 4701 Cox Rd Ste 285, Glen Allen, VA 23060**.

**FLSA COVERAGE**

32.     At all relevant times, Leidos was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

33.     At all relevant times, Leidos was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

34.     At all relevant times, Leidos was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, pens, pencils, etc.—that have been moved in or produced for commerce.

35.     At all relevant times, Leidos has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

36.     At all relevant times, Miller, Nicholson, and the other Straight Time Employees were Leidos's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

37.     At all relevant times, Miller, Nicholson, and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

38.     Leidos uniformly paid its Straight Time Employees the same hourly rates for all hours worked, including hours worked in excess of 40 a workweek.

39.     Leidos applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

40.     As a result of Leidos's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, includes Miller and Nicholson) did not receive overtime at the premium rates required by the FLSA.

4

41.     By paying straight time for overtime, Leidos did not pay its Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked in excess of 40 each workweek.

42.     Leidos's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

43.     Additionally, Leidos uniformly failed to pay the Straight Time Employees for travel time.

44.     This resulted in Miller, Nicholson, and the other Straight Time Employees not receiving wages, including overtime wages, owed to them for travel time during their normal working hours that kept them away from home overnight, in violation of the FLSA. *See* 29 CFR § 785.39.

## FACTS

45.     Leidos holds itself out as a "[k]ey player[] in government support, holding major contracts for civilian and defense agencies, including acquisition, delivery, and quantity agreements."[1]

46.     One such contract Leidos holds is the Defense Healthcare Management System Modernization (DHMSM) contract from the Department of Defense.[2]

47.     The DHMSM "is a $4.3B initiative to deliver a state-of-the-market electronic health record (EHR) system to the Military Health System (MHS)."[3]

48.     In 2017, Leidos began implementing its EHR software in MHS facilities and continues this process at present.[4]

---

[1] https://www.leidos.com/company/contract-vehicles (last visited May 28, 2024).
[2] https://www.usaspending.gov/award/CONT_IDV_N0003915D0044_9700 (last visited May 28, 2024).
[3] https://www.leidos.com/markets/health/military-health/mhs-genesis-program (last visited May 28, 2024).
[4] https://leidos.widen.net/s/gqkwrrd8wh/pdf-dhmsm-partnership-for-defense-health-fs-digital (last visited May 28, 2024).

49.     To meet its business objectives, Leidos hires workers, like Miller, Nicholson, and the other Straight Time Employees, who it assigns to MHS and Leidos facilities across the United States to train and support MHS medical providers in utilizing the EHR software.

50.     Leidos uniformly misclassifies Miller, Nicholson, and the other Straight Time Employees as independent contractors to avoid paying them overtime for hours worked in excess of 40 a workweek.

51.     Indeed, Leidos has been sued multiple times for the very straight time for overtime pay scheme alleged herein.[5]

52.     However, Leidos's response to these lawsuits was not to modify its unlawful pay practices to comply with relevant state and federal law.

53.     Rather, Leidos has continued unlawfully paying its employees straight time for overtime but has attempted to offload its liability for unpaid overtime wages onto various staffing companies, including, ALKU, Blue Ridge Federal Consulting, and Ecco Select.

54.     Regardless of which staffing company Miller, Nicholson, and the other Straight Time Employees receive their paychecks from, Leidos cannot offload its liability for unlawfully failing to pay Miller, Nicholson, and the Straight Time Employees overtime compensation for hours worked in excess of 40 in a workweek.

55.     Leidos controls all meaningful aspects of Miller's, Nicholson's, and the other Straight Time Employees' employment regardless of which staffing company happens to issue their paycheck.

56.     Leidos does not employ Miller, Nicholson, and its other Straight Time Employees on a project-by-project basis.

---

[5] *See e.g.*, *Tatum v. Leidos Health, LLC*, No. 1:19-cv-03298-AT (N.D. Ga. 2019); *Rancher v. Leidos Health, LLC*, No. 1:18-cv-04468-JPB (N.D. Ga. 2018); *Duchemin v. Leidos, Inc.*, No. 3:18-cv-00012-GPC-MDD (S.D. Cal. 2018); *Oshikoya v. Leidos Health, LLC*, No. 1:17-cv-03237-RLM-DLP (E.D. Va. 2017).

57.     Rather, Leidos employs and treats Miller, Nicholson, and its other Straight Time Employees just like regular employees.

58.     Leidos controls Miller's, Nicholson's, and its other Straight Time Employees' rates and methods of pay.

59.     Leidos requires Miller, Nicholson, and the other Straight Time Employees to submit their hours worked each workweek through the timekeeping system Leidos selects and utilizes.

60.     Leidos approves or disapproves these hours each week.

61.     Miller, Nicholson, and the other Straight Time Employees are paid only for the hours Leidos approves.

62.     On a weekly basis Leidos refuses to approve hours submitted by Miller, Nicholson, and the other Straight Time Employees.

63.     Leidos refuses to approve their hours for reasons including, the submitted hours are not for a compensable task according to Leidos policy, the hours exceed the number of hours Leidos has preapproved for a particular task, or even because the submitted hours do not utilize the proper Leidos task code.

64.     Leidos scrutinizes Miller's, Nicholson's, and the other Straight Time Employees' submitted hours in detail to ensure the hours conform with Leidos policies and procedures before approving them.

65.     Leidos refuses to approve all hours Miller, Nicholson, and the other Straight Time Employees worked and submitted for compensation.

66.     And Miller, Nicholson, and the other Straight Time Employees have little or no opportunity to experience a profit or loss related to their employment.

67.     Their income from their work is limited to their hourly rate.

68.     Miller, Nicholson, and the other Straight Time Employees do not share in Leidos's financial success.

69.     Leidos controls Miller's, Nicholson's, and its other Straight Time Employees' schedules, assignments, and work locations.

70.     Leidos assigns Miller, Nicholson, and the other Straight Time Employees to work at MHS and Leidos facilities across the United States (and world).

71.     Miller's, Nicholson's, and the other Straight Time Employees' schedules and work locations could and did change unilaterally at Leidos's direction, for example:

**Subject: RE: Trip Cancelled for: Nicholson, Rasoul  -**

All,

Per the site, they want to keep the current RAD trainer, for next week which is why Mr. Nicholson was removed from the schedule.

Thanks
**Dianna Sharp | Leidos**
DHMSM Deployment Training Coordinator
Leidos Partnership for Defense Health (LPDH)
DoD Healthcare Management System Modernization (DHMSM)
Dianna.L.Sharp@Leidos.com

leidos

72.     Leidos pays for Miller's, Nicholson's, and the other Straight Time Employees' travel expenses, such as airfare and lodging.

73.     Leidos reimburses Miller, Nicholson, and the other Straight Time Employees for other expenses incurred while traveling, such as mileage, based upon expense reports they submit to Leidos:

Leidos Proprietary
*Leidos Proprietary*

**LEIDOS VEHICLE MILEAGE REPORT**

| EMPLOYEE NAME: | | | AJ Miller | EMPLOYEE #: | 349485 | | |
|---|---|---|---|---|---|---|---|

| | | ODOMETER READING | | WORKORDER | JOB CONTROL | Current Mileage Rate: | .585 | |
|---|---|---|---|---|---|---|---|---|

| DAY | DATE | BEGIN | END | WORKORDER NUMBER | JOB CONTROL NUMBER | LOCATIONS DRIVEN Privately Own Vehicle (POV) FROM - TO / Round Trip (RT) | TOTAL MILES | Daily Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | | | | | 0 | 0 |
| | | | Date: | | | Total Miles This Report | 0.0 | |
| Employee Signature | | | | | | Mileage reimbursement due | $    - | 0 |
| | | | | | | | These totals should MATCH | |

. The information in this document is proprietary to Leidos. It may not be used, reproduced, disclosed, or exported without the written approval of Leidos.

74. Leidos pays Miller, Nicholson, and the other Straight Time Employees a per diem, while they work away from home, for food and incidentals.

75. For example, during the week of March 25 to March 31, 2023, Miller's Time and Expense Report to Leidos included $553 in per diem payments and $15 for laundry:

| NAME: | AJ Miller | RECORD LOCATOR: | RX1RSM | | | | DHMSM SUBCONTRACTOR ER | | leidos |
|---|---|---|---|---|---|---|---|---|---|
| EMPLOYEE #: | 349486 | RECORD LOCATOR: | | ☑ CONSULTANT | | | HOME DIVISION: DHMSM - LPGH | | |
| VENDOR#: | 01739025 | RECORD LOCATOR: | | | | | | | |

| DATE | CITY & STATE | MEALS & INCIDENTALS PER DIEM | REF. NO. | LODGING | | AIRFARE | | RENTAL CAR | | OTHER EXPENSES | | DAILY TOTAL | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Leidos Paid | Traveler Paid | Leidos Paid | Traveler Paid | Leidos Paid | Traveler Paid | Expense Name | Cost | | |
| Saturday, March 25, 2023 | VIENNA, VA | $79.00 | | | | | | | | | | $79.00 | |
| Sunday, March 26, 2023 | VIENNA, VA | $79.00 | | | | | | | | | | $79.00 | |
| Monday, March 27, 2023 | VIENNA, VA | $79.00 | | | | | | | | | | $79.00 | |
| Tuesday, March 28, 2023 | VIENNA, VA | $79.00 | | | | | | | | | | $79.00 | |
| Wednesday, March 29, 2023 | VIENNA, VA | $79.00 | | | | | | | | | | $79.00 | |
| Thursday, March 30, 2023 | VIENNA, VA | $79.00 | | | | | | | | Laundry | $15.00 | $94.00 | |
| Friday, March 31, 2023 | VIENNA, VA | $79.00 | | | | | | | | | | $79.00 | |
| | | $553.00 | | Leidos Paid | $0.00 | Leidos Paid | $0.00 | Leidos Paid | $0.00 | | $15.00 | $568.00 | |

| BUSINESS PURPOSE FOR TRAVEL | | | | DESCRIPTION | WAVE TRAVEL CHARGE CODE | ORG # | ACCOUNT | AMOUNT | Less Non-Reimbursable Amount | |
|---|---|---|---|---|---|---|---|---|---|---|
| WAVE: | Wave Water Reed | | | Wave Water Reed | 340264.00.2002.00.11024608.W16 | | | | | |
| ROLE: | CALL CENTER | | | | | | | | | |
| HOTEL EF CODE: | | | | | | | | | | |
| REFERENCE # ADDITIONAL NOTES | | | | | | | | | Total | $ - |
| | | | | | | | | | Net due | |
| | | | | | | | | | traveler | $568.00 |
| | | | | | | | | | Net due Leidos personal check attached | |
| | | | | | Must equal net due traveler or zero. | | | $0.00 | | |

76.     Leidos controls Miller's, Nicholson's, and its Straight Time Employees' work.

77.     Leidos requires Miller, Nicholson, and its other Straight Time Employees to follow its policies, procedures, plans, protocols, and specifications.

78.     Miller's, Nicholson's, and the other Straight Time Employees' work must strictly adhere to the quality standards put in place by Leidos.

79.     Leidos requires that Miller, Nicholson, and the other Straight Time Employees complete what Leidos terms "Continuous Learning," which is ongoing training, in the timeframe determined by Leidos.

80.     Miller, Nicholson, and the other Straight Time Employees take direction from, and are supervised by, Leidos personnel.

81.     Miller, Nicholson, and the other Straight Time Employees are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

82.     Miller's, Nicholson's, and the other Straight Time Employees' daily and weekly activities are routine and largely governed by standardized plans, procedures, and checklists created by Leidos.

83.     Virtually every job function is predetermined by Leidos, including materials used to train and support the MHS medical providers, Miller's, Nicholson's, and the other Straight Time Employees' work schedules, and related work duties.

84.     Leidos is in the business of providing information technology training and support services for EHR software to MHS facilities.

85.     Miller, Nicholson, and the other Straight Time Employees provide these services for Leidos.

86.     Without the job Miller, Nicholson, and the other Straight Time Employees perform, Leidos would not be able to complete its business objective of implementing its EHR software in MHS facilities.

87.     The work Miller, Nicholson, and the other Straight Time Employees perform is therefore an essential and integral part of Leidos's core business.

88.     Miller, Nicholson, and the other Straight Time Employees rely on Leidos for work and compensation.

89.     Miller, Nicholson, and the other Straight Time Employees cannot subcontract out the work they are assigned by Leidos.

90.     Miller, Nicholson, and the other Straight Time Employees do not substantially invest in the materials required to complete the overall job Leidos assigns to them.

91.     Rather, Leidos incurs the large-scale business and operating expenses like payroll, marketing, equipment, and materials.

92.     Miller, Nicholson, and the other Straight Time Employees do not market their services while employed by Leidos.

93.     Leidos sets Miller's, Nicholson's, and the other Straight Time Employees' work schedules, which effectively prohibits them from working other jobs, while working for Leidos.

94.     Miller, Nicholson, and the other Straight Time employees are not engaged in an independently established trade, occupation, profession, or business of the same nature as the service they perform for Leidos.

95.     In sum, as a matter of economic reality, Miller, Nicholson, and the other Straight Time Employees are Leidos's employees.

96.     And Leidos uniformly pays Miller, Nicholson, and its other Straight Time Employees on an hourly basis.

97.     Miller, Nicholson, and the other Straight Time Employees regularly work more than 40 hours a workweek.

98.     But Leidos does not pay them premium overtime wages.

99.     Instead, Leidos pays Miller, Nicholson, and its other Straight Time Employees the same hourly rates for all hours worked, including those hours worked in excess of 40 in a workweek.

100.    While exact job titles and job duties, as well as job location may differ, these employees are subjected to the same or similar illegal straight time for overtime pay scheme for similar work.

101.    For example, Miller worked for Leidos as a Deployment Trainer from approximately June 2020 until December 2023.

102.    As a Deployment Trainer, Miller's primary job duties included providing training and support to medical providers at military treatment centers through demonstrations of how to properly utilize the EHR software.

103.    Miller also provided assistance to MHS medical providers during the first 30 days the software would "go live" into use in MHS facilities.

104.    Miller provided this "go live" troubleshooting support both on site, "elbow to elbow" with the MHS providers, and from Leidos's call center, which is located at its Virginia headquarters.

105.   Miller has no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs.

106.   Miller's primary duties never included computer systems analysis, coding, programming, recommending hardware, or designing, testing, or modifying machine operating systems.

107.   Miller was Leidos's hourly employee.

108.   Specifically, Leidos paid Miller approximately $44 an hour.

109.   Miller reported his hours worked to Leidos each week.

110.   Leidos reviewed Miller's reported hours each week.

111.   After reviewing the hours, Leidos approved or disapproved the hours Miller submitted each week.

112.   Miller was only paid for the hours Leidos approved.

113.   Leidos's records reflect the hours Miller submitted each week.

114.   Miller regularly worked more than 40 hours a workweek while employed by Leidos.

115.   In fact, Miller typically worked 8 to 12+ hours a day, generally for 5 days a week (or 40 to 60+ hours a workweek).

116.   For example, during the two-week pay periods ending in April 2023, Miller worked 101 hours and 101.25 hours:

| Apr 28, 2023 Take Home | Hours | Gross | |
|---|---|---|---|
| $3,106.95 | 101.25 | $4,212.00 | > |
| Apr 14, 2023 Take Home | Hours | Gross | |
| $3,066.53 | 101 | $4,201.60 | > |

117.    Despite knowing Miller regularly worked overtime, Leidos did not pay him overtime wages for the hours he worked over 40 in a workweek.

118.    Instead, Leidos paid him under its uniform, illegal straight time for overtime pay scheme.

119.    So, rather than receiving "time and a half" for each hour of overtime he worked, Miller received the same $44 hourly rate for all hours worked – including his overtime hours.

120.    Because of Leidos's uniformly applied straight time for overtime pay scheme, Miller never received the required "time and a half" overtime premium for the hours he worked over 40 in a workweek.

121.    Likewise, Nicholson worked for Leidos as a Training Specialist II from approximately March 2022 until December 2023.

122.    As a Training Specialist II, Nicholson's primary responsibilities included providing training and support to MHS medical providers, based on training materials provided by Leidos, on how to properly utilize Leidos's EHR software, including how to properly schedule patients, input patient's demographic information, input notes into a patient's chart, update a patient's treatment plan, place orders, etc.

123.    Nicholson additionally provided assistance to these medical providers during the first 30 days the software would "go live" into use in various MHS facilities.

124.    Nicholson has no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs.

125.    Nicholson's primary duties never included computer systems analysis, coding, programming, recommending hardware, or designing, testing, or modifying machine operating systems.

126.    Nicholson was Leidos's hourly employee.

127.    Specifically, Leidos paid Nicholson approximately $50 an hour.

128.    Nicholson reported his hours worked to Leidos each week.

129.    Leidos reviewed Nicholson's reported hours each week.

130.    After reviewing the hours, Leidos approved or disapproved the hours Nicholson submitted each week.

131.    Nicholson was only paid for hours Leidos approved.

132.    Leidos's records reflect the hours Nicholson submitted each week.

133.    Leidos's records also reflect the hours it approved or disapproved for Nicholson each week.

134.    Nicholson regularly worked more than 40 hours a week while employed by Leidos.

135.    For example, during the week of August 26 to September 1, 2023, Nicholson reported working 42 hours to Leidos:



136.    But Leidos regularly only approved for payment fewer hours than Nicholson had actually worked in a workweek.

137.    In fact, Nicholson typically worked 10 to 12+ hours a day for 4-5 days a week (or 40 to 60+ hours a week).

138.    Despite knowing Nicholson regularly worked overtime, Leidos did not pay him overtime wages for the hours he worked in excess of 40 in a workweek.

139.    Instead, Leidos paid him under its uniform, illegal straight time for overtime pay scheme.

140.    For example, during the week of June 20 to June 26, 2022, Nicholson worked 67.5 hours, but was paid at his base rate of $50 an hour for all 67.5 hours worked:

| #5643 - Rasoul Nicholson 601/210/External | | | |
|---|---|---|---|
| **Earnings** | | | |
| | **Rate** | **Hours** | **Current** |
| Regular | 50.00 | 67.50 | 3,375.00 |
| **Gross Pay** | | | **3,375.00** |

141.    So, rather than receiving 1.5 times his regular rate of pay for each hour he worked in excess of 40 in the workweek, Nicholson received the same $50 hourly rate for all hours worked.

142.    Because of Leidos's uniformly applied straight time for overtime pay scheme, Nicholson never received the required "time and a half" overtime premium for the hours he worked in excess of 40 in a workweek.

143.    Leidos pays its other Straight Time Employees according to the same straight time for overtime pay scheme.

144.    Like Miller and Nicholson, Leidos pays its other Straight Time Employees on an hourly basis.

145.    Like Miller and Nicholson, Leidos requires its other Straight Time Employees to report their hours to Leidos.

146.    Like Miller and Nicholson, the other Straight Time Employees are only paid for the hours Leidos approves.

147.    Just as Leidos maintains records of the hours worked submitted by Miller and Nicholson, it also maintains records of the hours worked submitted by the other Straight Time Employees.

148.    Leidos also maintains records of the hours of work it approved and disapproved for Miller, Nicholson, and the other Straight Time Employees.

149. And like Miller and Nicholson, Leidos regularly approves fewer hours than the other Straight Time Employees actually work.

150. Leidos's records show the Straight Time Employees regularly work more than 40 hours a workweek.

151. Every Straight Time Employee worked more than 40 hours in at least one workweek during the last 3 years.

152. Indeed, like Miller and Nicholson, the Straight Time Employees typically work 10-12+ hours a day for 4-5 days a week (or 40 to 60+ hours a week).

153. Despite knowing its Straight Time Employees regularly work overtime, Leidos does not pay them required premium overtime wages.

154. Leidos has never paid Miller, Nicholson, and its other Straight Time Employees on a "salary basis."

155. Leidos does not pay Miller, Nicholson, and its other Straight Time Employees a guaranteed salary that is not subject to reduction based on the quality or quantity of work.

156. If Miller, Nicholson, and the Straight Time Employees work fewer than 40 hours, Leidos only pays them for the hours they actually work.

157. Because Leidos fails to pay Miller, Nicholson, and its other Straight Time Employees on a "salary basis," Miller, Nicholson, and the other Straight Time Employees are non-exempt employees entitled to premium overtime wages.

158. But Leidos does not pay Miller, Nicholson, and its other Straight Time Employees premium overtime wages when they work more than 40 hours in a workweek.

159. Instead, Leidos pays them the same hourly rate for all hours worked, including those worked over 40 in a workweek, in willful violation of the FLSA.

160.    Additionally, Leidos never pays hourly wages to Miller, Nicholson, and its other Straight Time Employees for travel time to and from MHS and Leidos facilities across the United States.

161.    Leidos schedules Miller, Nicholson, and the other Straight Time Employees to work at these facilities.

162.    And Leidos makes the travel arrangements and pays for flights to these facilities and lodging while Miller, Nicholson, and the other Straight Time Employees work at these facilities.

163.    But Leidos does not provide hourly compensation for any travel time by Miller, Nicholson, and the other Straight Time Employees (Leidos's "nonpayment of travel time policy").

164.    For example, Leidos made clear to Nicholson it would not pay him for any travel time:



165.     And Miller, Nicholson, and the other Straight Time Employees travel away from home overnight during their regular working hours.

166.     Leidos's uniform application of its nonpayment for travel time policy deprives Miller, Nicholson, and the other Straight Time Employees of wages, including overtime wages, for travel time during their normal working hours for travel that keeps them away from home overnight. *See* 29 CFR § 785.39.

## COLLECTIVE ACTION ALLEGATIONS

167.     Miller and Nicholson incorporate all other paragraphs by reference.

168.     Miller and Nicholson bring their claims as a collective action on behalf of themselves and the other Straight Time Employees.

169.     Leidos uniformly misclassifies the Straight Time Employees as independent contractors.

170.     The Straight Time Employees are uniformly victimized by Leidos's straight time for overtime pay scheme, which is in willful violation of the FLSA.

171.     The Straight Time Employees are uniformly victimized by Leidos's nonpayment of travel time policy, which is in willful violation of the FLSA.

172.     Other Straight Time Employees worked with Miller and Nicholson and indicated they are paid in the same manner, performed similar work, and are subject to Leidos's same illegal straight time for overtime pay scheme and nonpayment of travel time policy.

173.     Based on their experience with Leidos, Miller and Nicholson are aware Leidos's illegal straight time for overtime pay scheme and nonpayment of travel time policy are imposed on the other Straight Time Employees.

174.     The Straight Time Employees are therefore similarly situated in the most relevant respects.

175.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

176.     Additionally, any relevant exemption defenses would require Leidos to pay the Straight Time Employees on a "salary basis."

177.     Because Leidos fails the "salary basis" test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

178.     The only *relevant* inquiry is whether the Straight Time Employees worked more than 40 hours in a workweek (which, by definition, they did).

179.     Therefore, the specific job titles or precise job locations of the Straight Time Employees do not prevent collective treatment.

180.     Rather, Leidos's uniform straight time for overtime pay scheme render Miller, Nicholson, and the other Straight Time Employees similarly situated for the purpose of determining their right to overtime pay.

181.     Leidos's records reflect the number of hours Miller, Nicholson, and the other Straight Time Employees recorded working "on the clock" each workweek and the number of hours worked Leidos approved each week.

182.     Leidos's records also show it paid Miller, Nicholson, and the other Straight Time Employees "straight time," instead of "time and a half," for their recorded hours of work in excess of 40 each workweek.

183.     Likewise, Leidos's records show it failed to pay the Straight Time Employees for their travel time away from home.

184.     The back wages owed to Miller, Nicholson, and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

185.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Leidos's records, and there is no detraction from the common nucleus of liability facts.

186.     Therefore, the issue of damages does not preclude collective treatment.

187.     Miller's and Nicholson's experiences are therefore typical of the experiences of the other Straight Time Employees.

188.     Absent this collective action, many Straight Time Employees will not obtain redress for their injuries, and Leidos will reap the unjust benefits of violating the FLSA.

189.     Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

190.     Indeed, if individual actions were required to be brought by each Straight Time Employee, the result would be a multiplicity of actions, creating a hardship to the Straight Time Employees, to the Court, and to Leidos.

191.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

192.     Miller and Nicholson know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

193.     As part of its regular business practices, Leidos intentionally, willfully, and repeatedly violated the FLSA with respect to the Straight Time Employees.

194.     Leidos's illegal straight time for overtime pay scheme deprived Miller, Nicholson, and the other Straight Time Employees of the premium overtime wages they are owed under federal law.

195.     There are many similarly situated Straight Time Employees who have been denied overtime pay in willful violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

196.     This notice should be sent to the Straight Time Employees pursuant to 29 U.S.C. § 216(b).

197.     The Straight Time Employees are known to Leidos, are readily identifiable, and can be located through Leidos's business and personnel records.

### LEIDOS'S WAGE VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA

198.     Miller and Nicholson incorporate all other paragraphs by reference.

199.     Leidos knew it was subject to the FLSA's overtime provisions.

200.     Leidos knew the FLSA required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

201.     Leidos knew each Straight Time Employee worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required them to report their hours worked each week.

202.     Leidos knew that the Straight Time Employees are its hourly employees.

203.     Leidos knew it paid the Straight Time Employees on an hourly basis.

204.     Leidos knew it paid the Straight Time Employees straight time for overtime.

205.     Leidos knew it did not pay the Straight Time Employees on a "salary basis."

206.     Leidos knew it did not pay the Straight Time Employees any guaranteed salary that was not subject to reduction based on the quantity or quality of work.

207.     Leidos knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

208.     Leidos knew it needed to pass the "salary basis" test to qualify for any relevant exemptions it claimed with respect to the Straight Time Employees.

209. Nonetheless, Leidos uniformly misclassified the Straight Time Employees as independent contractors to avoid paying them overtime wages.

210. Leidos's decision to misclassify its Straight Time Employees as independent contractors was neither reasonable, nor was this decision made in good faith.

211. Leidos's failure to pay its Straight Time Employees premium overtime wages was neither reasonable, nor was the decision not to pay these employees premium overtime wages made in good faith.

212. Leidos knew the FLSA required it to pay non-exempt employees, including the Straight Time Employees, for travel time during their normal working hours that kept them away from home overnight.

213. Leidos's failure to pay its Straight Time Employees for travel during their normal working hours that kept them away from home overnight was neither reasonable, nor was the decision made in good faith.

214. Leidos knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

215. Leidos knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme and nonpayment of travel time policy that deprived the Straight Time Employees of overtime wages at the required premium rates, in violation of the FLSA.

216. Indeed, Leidos and affiliated entities have been sued previously by employees for failing to pay overtime wages in violation of the FLSA, including for the same illegal straight time for overtime pay scheme that is the basis of this collective action. *See e.g.*, *Tatum v. Leidos Health, LLC*, No. 1:19-cv-03298-AT (N.D. Ga. 2019); *Rancher v. Leidos Health, LLC*, No. 1:18-cv-04468-JPB (N.D. Ga. 2018); *Oshikoya v. Leidos Health, LLC*, No. 1:17-cv-03237-RLM-DLP (E.D. Va. 2017).

COUNT

24

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (COLLECTIVE ACTION)

217.    Miller and Nicholson incorporate all other paragraphs by reference.

218.    Miller and Nicholson bring their FLSA claims as a collective action on behalf of themselves and the other Straight Time Employees.

219.    Leidos violated, and is violating, the FLSA by employing non-exempt employees (Miller, Nicholson, and the other Straight Time Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked in excess of 40 in a workweek.

220.    Leidos's unlawful conduct harmed Miller, Nicholson, and the other Straight Time Employees by depriving them of the overtime wages they are owed.

221.    Accordingly, Miller, Nicholson, and the other Straight Time Employees are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### JURY DEMAND

222.    Miller and Nicholson demand a trial by jury on all Counts.

### RELIEF SOUGHT

Miller and Nicholson, individually and on behalf of the other Straight Time Employees, seek the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Straight Time Employees allowing them to join this action by filing a written notice of consent;

b.    An Order pursuant to Section 16(b) of the FLSA finding Leidos liable for unpaid overtime wages due to Miller, Nicholson, and the Straight Time Employees, plus liquidated damages in an amount equal to their unpaid wages;

      c.      A Judgment against Leidos awarding Miller, Nicholson, and the Straight Time Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

      d.      An Order awarding attorney's fees, costs, and expenses;

      e.      Pre- and post-judgment interest at the highest applicable rates; and

      f.      Such other and further relief as may be necessary and appropriate.

Dated: May 31, 2024.

Respectfully submitted,

**BUTLER CURWOOD, PLC**

By: */s/ Zev H. Antell*
    Harris D. Butler, III (VSB No. 26483)
    Craig J. Curwood (VSB No. 43975)
    Zev H. Antell (VSB No. 74634)
    Samantha R. Galina (VSB No. 96981)
    140 Virginia Street, Suite 302
    Richmond, Virginia 23219
    Phone: (804) 648-4848
    Fax:   (804) 237-0413
    harris@butlercurwood.com
    craig@ butlercurwood.com
    zev@ butlercurwood.com
    samantha@ butlercurwood.com

    Michael A. Josephson*
    TX Bar No. 24014780
    Andrew W. Dunlap*
    TX Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Phone: (713) 352-1100
    Fax:   (713) 352-3300
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone:  (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR MILLER, NICHOLSON, AND THE STRAIGHT TIME EMPLOYEES**