IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANDUJAR MILLER and RASOUL NICHOLSON, Individually and For Others Similarly Situated, <br><br> v. <br><br> LEIDOS, INC., | Case No. 1:24-CV-931(PTG/LRV) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE DECLARATION OF CATHY ZAGAR**

**Harris D. Butler, III**
(VSB No. 26483)
**Craig J. Curwood**
(VSB No. 43975)
**Zev H. Antell**
(VSB No. 74634)
**Samantha R. Galina**
(VSB No. 96981)
**BUTLER CURWOOD, PLC**
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel: 804-648-4848
Fax: 804-237-0413
Email:
harris@butlercurwood.com
craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

**Michael Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Alyssa J. White**
TX Bar No. 24073014
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFFS
AND THE PUTATIVE CLASS MEMBERS**

**TABLE OF CONTENTS**

1. INTRODUCTION. ...........................................................................................................................1
2. PROCEDURAL AND FACTUAL HISTORY. ......................................................................................1
3. THE COURT CAN EXCLUDE FALSIFIED EVIDENCE. .....................................................................7
4. THE COURT SHOULD EXCLUDE ZAGAR'S DECLARATION
   BECAUSE IT IS UNRELIABLE AND MISLEADING. ..........................................................................8
5. CONCLUSION. ...............................................................................................................................9

**1.   INTRODUCTION.**

Leidos bases its opposition to conditional certification on a misleading declaration by Cathy Zagar. Miller knows the declaration is misleading because he deposed Zagar. And during the deposition, she admitted she lacks personal knowledge of the contents of her declaration. Such a "declaration" establishes only Zagar's willingness to sign what was put before her; it says nothing reliable about facts she admits were beyond her knowledge.

By submitting such "evidence" to the Court, Leidos engaged in "egregious and inexcusable conduct" designed to "interfere with the judicial system's ability" to "impartially adjudicate" this matter. *Omran v. Bleezarde*, No. 1:15-CV-00190-DBH, 2016 WL 5401018, at *9–10 (D.N.H. Aug. 26, 2016), *adopted*, 2016 WL 5394692 (D.N.H. Sept. 27, 2016), *aff'd*, No. 16-1638, 2018 WL 1840194 (1st Cir. Jan. 8, 2018). Because Zagar lacked personal knowledge of matters to which she initially swore, the Court should disregard her declaration. *Cf. Smith v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2021 WL 6881062, at *10 (E.D. Va. Dec. 21, 2021) (discounting plaintiffs' declarations because they lacked personal, "first-hand knowledge" of practices at facilities other than their own). Zagar's declaration, Doc. 35-1, should be excluded.

**2.   PROCEDURAL AND FACTUAL HISTORY.**

On July 25, 2024, Miller moved to facilitate court-authorized notice to all Leidos workers who were illegally paid straight time for overtime. Doc. 29. On August 8, 2024, Leidos filed its opposition. Doc. 35. In support, Leidos attached a declaration from Zagar (its subcontract program manager). Doc. 35-1. In her declaration, Zagar represented she had "personal knowledge of the facts" she addressed. *Id.* at ¶¶ 1. Zagar then swore under oath: (1) Leidos doesn't impose pay policies on its subcontractors; (2) Leidos requires its subcontractors to pay overtime compensation; (3) Leidos doesn't delegate how its employees are classified; (4) Leidos's subcontractors use their own payroll

1

and timekeeping systems; and (5) Leidos's timesheet approval process does not affect employees' overtime compensation. *Id.* at ¶¶ 11, 13–15, 20.

Miller deposed Zagar on October 9, 2024. *See* Ex. 1 (Zagar's deposition). Zagar admitted she lacked personal knowledge of subjects she addressed in her declaration, starting with subcontractors' pay rates and whether subcontractors could have paid overtime:

```
058:20  Q.  Your declaration says that the subcontractors
     21      do not inform Leidos of the pay rate that
     22      they set for their employees?
059:01  A.  Correct.
     02  Q.  How do you know that?
     03  A.  I've never been informed.  I don't have this
     04      information.
     05  Q.  Okay.  But how do you know that the
     06      subcontractors don't inform someone else at
     07      Leidos?
     08  A.  I don't know.
     09  Q.  Okay.  So you've never been informed as to
     10      whether or not the subcontractors tell --
     11      you've never been informed as to whether or
     12      not the subcontractors -- what the
     13      subcontractor's pay rates for their employees
     14      were.  Is that correct?
     15  A.  Correct.
     16  Q.  Okay.  You don't know if somebody else at
     17      Leidos has been informed of that?
     18  A.  I don't know.
```

2

```
        19   Q.    You also say that the bill rate is
        20         significant enough that subcontractors could
        21         have paid their employees' overtime.  Is that
        22         correct?
 060:01   A.    Correct.
     02   Q.    How do you know that?
     03   A.    I don't know.
     04   Q.    Okay.  So why did you say that?
     05   A.    I don't know.
```

Ex. 1 at 58:20–60:05. Despite her sworn statement that "Leidos was unaware how, or at what rate, the subcontractors paid their employees," Doc. 35-1 at ¶ 12, Zagar revealed she had no personal knowledge on which she based that assertion:

```
     04   Q.    Okay.  You say here that Leidos was unaware
     05         how or at what rate the subcontractors paid
     06         their employees.  Is that correct?
     07   A.    Yes.
     08   Q.    And how do you know that to be true?
     09   A.    I don't know the information.
```
…
```
     03   Q.    Okay.  But you don't have any personal
     04         knowledge?
     05   A.    No, I don't.
```

Ex. 1 at 71:04–09, 73:03–05. And in the declaration, Zagar asserted "[t]he subcontractors use their own payroll and timekeeping systems to track employee time and pay employees[.]" Doc. 35-1 at ¶ 15. But she admitted she had no personal knowledge on which to base that statement:

```
     16   Q.    Subcontractors as you said in Paragraph 15,
     17         use their own payroll and time keeping
     18         systems to track employee time and pay
     19         employees for time worked.  Is that correct?
     20   A.    Yes.
```

```
21  Q.  Do you actually have personal knowledge that
22      subcontractor companies are using their own
075:01  time keeping systems?
02          MR. MURPHY:  Same objection.  This will
03      exclude any communications you have had with
04      counsel.
05  A.  I don't know.
06  Q.  You don't have personal knowledge?
07  A.  I don't.
08  Q.  So for all you know they could be using the
09      information reflected in unanet, correct?
10          MR. MURPHY:  Same objection.
11  A.  Correct.
12  Q.  And you don't know if the subcontracting
13      companies pay their employees based on their
14      time in unanet or a different time keeping
15      system?
16          MR. MURPHY:  Same objection.  Calls for
17      speculation.
18  A.  I don't know.
```

Ex. 1 at 74:16–75:18.

In paragraph 20 in her declaration, Zagar swore "Leidos does not disapprove timesheets because a subcontractor's employee worked overtime." Doc. 35-1 at ¶ 20. But she later swore she had no personal knowledge of that fact:

```
09  Q.  You don't have personal knowledge as to the
10      first sentence in Paragraph 20, correct?
11  A.  That's correct.
```

Ex. 1 at 80:09–11. In fact, Zagar did not even know when Leidos paid overtime:

4

```
09  Q.  Okay. When does Leidos require it's
10      subcontractors pay overtime?
11  A.  I don't know when they would pay overtime.
12  Q.  Well, you say Leidos required subcontractors
13      to pay overtime as appropriate, right?
14  A.  We're not involved in paying their employees.
15      I don't know when they would do that.
16  Q.  Why did you say that?
17  A.  I don't know their pay schedule.
18  Q.  So you say, as appropriate, what do you mean
19      by that?
20  A.  At their discretion. It's their
21      responsibility because that's their employee.
22  Q.  Okay. But how did Leidos require the
083:01  subcontractors to pay overtime?
02  A.  I don't know.
```

Ex. 1 at 82:09–83:02.[1]

And regarding overtime pay practices, Zagar's deposition testimony did not just reveal a lack of foundation, it demonstrated a *contradiction*:

```
10      start over. Paragraph 12, first sentence you
11      say, Leidos does not direct how the
12      subcontractors pay their employees including
13      how to pay employees for any hours worked in
14      a week in excess of 40 hours. Do you see
15      that?
16  A.  Yes.
17  Q.  Is that true?
18  A.  Yes.
```

---

[1] And Zagar's failings of personal knowledge have not been limited to her declaration; they have implications for the quality and reliability of discovery. Zagar testified she "d[id]n't know" about Leidos's exemption and employment classification or billing practices. Ex. 1 at 240:09–241:18. Yet she verified information in Leidos's responses to Miller's interrogatories—information concerning the very subjects about which she knew nothing—was "true and correct," *Id.* at 244:13–16.

5

```
19   Q.   Then why do you say at the end of Paragraph
20        20 that Leidos requires the subcontractors to
21        pay overtime as appropriate?
22   A.   We're not involved in their paying practices.
```

Ex. 1 at 83:10–22. Leidos cannot both "require[ ] the subcontractors to pay overtime as appropriate," Doc. 35-1 at ¶ 20, and "not [be] involved in [subcontractors'] paying practices." Ex. 1 at 83:22.

Even the deposition itself contained contradictions. Zagar first said she was testifying on behalf of Leidos before reversing herself later. Ex. 1 at 7:12–4, 10:15–20. She claimed she had not participated in answering interrogatories on behalf of Leidos before acknowledging later that she had verified the information in them. *Id.* at 18:18–21, 244:13–16. And, on the deposition errata sheet, she made corrections regarding her *own* pay, claiming she "misspoke" when she said she was paid hourly instead of a salary:

| Page | Line | Correction/Change and Reason |
|------|------|------------------------------|
| 179  | 10   | Answer to question "Are you paid salary?" should be "Yes." I misspoke. |
| 179  | 12   | Answer to question "How are you paid?" should be "Salary." I misspoke. |

Ex. 2 at 1. If Zagar does not know how *she* is paid, her testimony about how *others* are paid can hardly be reliable.

Leidos submitted Zagar's declaration for the sole purpose of preventing its employees from receiving notice of this collective action. In opposing conditional certification, Leidos represented its subcontractors "dictate how they pay their employees" and are responsible for "implementing payroll and timekeeping policies on their own accord." Doc. 35 at 1, 3. Leidos further represented each IDIQ Subcontract is independently negotiated by each subcontractor and entered into after arms-length negotiation. *Id.* at 3. Thus, Leidos claims it does not (and cannot) implement a classwide pay policy for purposes of conditional certification. But Ms. Zagar's deposition testimony confirms that (despite Leidos' reliance on her declaration) she has no personal knowledge of Leidos's negotiations with its

6

subcontractors, the extent to which Leidos policies and procedures apply to its subcontractors, how Leidos employees are classified, or how Leidos's approval or disapproval of employees' time impacts their pay. Zagar's declaration lacks a proper foundation of personal knowledge and contradicts Zagar's in-person testimony. The Court should disregard it.

**3.    THE COURT CAN EXCLUDE FALSIFIED EVIDENCE.**

Federal courts have inherent powers to sanction parties for bad faith conduct. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). These inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* "That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

"When a party falsifies evidence of central importance to a case, this shows bad faith, willfulness, or fault, and thus supports a court's exercise of its inherent power to [issue appropriate sanctions]." *Biron v. Wyndham Vacation Ownership, Inc.*, No. 2:19-CV-01695-RFB-EJY, 2021 WL 7160716, at *4 (D. Nev. Aug. 27, 2021) (cleaned up). "Federal courts have long recognized that providing false [ ] testimony…constitutes perjury and, in effect, constitutes fraud on the court." *DaSilva v. Smith's Food & Drug Ctrs., Inc.*, No. 2:12-CV-00595-GMN-VCF, 2013 WL 2558302, at *2 (D. Nev. June 8, 2013). Indeed, "[t]he submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of the culpable party's submissions throughout this litigation" and requires "independent corroboration of each submission…or to accept the real possibility that those [ ] documents submitted by the opposing party are inaccurate. *Id.* at *3 (quoting *Pope v. Fed. Express Corp.,* 138 F.R.D. 675, 683 (W.D. Mo. 1990), *aff'd in part, vacated on other grounds*, 974 F.2d 982 (8th Cir. 1992)).

Courts routinely strike or exclude a party's pleadings (and may even dismiss a party's claims or defenses altogether) for submitting and relying on documents containing false misrepresentations. *See, e.g.*, *Omran*, 2016 WL 5401018, at \*9–10 (finding conduct of party who filed declaration not authorized by declarant to be "egregious and inexcusable"); *Jackson v. Murphy,* 468 F. App'x 616, 620 (7th Cir. 2012) (affirming dismissal of party's claims where party "both perjured himself and forged a document critical to the prosecution of his case"); *Garcia v. Berkshire Life Ins. Co. of Am.,* 569 F. 3d 1174, 1180 (10th Cir. 2009) (dismissal warranted for "submission of falsified evidence"); *Young v. Office of U.S. Senate Sergeant at Arms,* 217 F.R.D. 61, 70 (D.D.C. 2003) (dismissal appropriate "where a party manufactures evidence which purports to corroborate its substantive claims.") (quoting *Vargas v. Peltz,* 901 F. Supp. 1572, 1580-81 (S.D. Fla. 1995)); *Biron*, 2021 WL 7160716, at \*5 (dismissing plaintiff's claims where deposition testimony evidenced documents she submitted were demonstrably false); *Juarez v. Delgado*, No. ED CV 13-0275 DDP (AS), 2016 WL 360613, at \*6 (C.D. Cal. Feb. 23, 2016) (noting exclusion of fabricated evidence might be appropriate where false evidence submitted); *DaSilva*, 2013 WL 2558302, at \*4 (dismissing complaint where plaintiff submitted falsified evidence to court); *see also Sousa v. Mortg. Elec. Registration Sys., Inc.*, No. CA 12-005-M, 2013 WL 4094379, at \*5 (D.R.I. Aug. 13, 2013) (imposing monetary sanctions on party for submitting to court false factual assertions). For the same reason, the Court should exclude Zagar's declaration here.

**4.    THE COURT SHOULD EXCLUDE ZAGAR'S DECLARATION BECAUSE IT IS UNRELIABLE AND MISLEADING.**

As shown above, Leidos tendered a declaration—from a witness who admits she lacked personal knowledge—to this Court. And it claimed the "evidence" meant Miller was not entitled to court-authorized notice. In doing so, Leidos knowingly (or, at best, negligently) submitted false testimony on Ms. Zagar's behalf and attempted to interfere with this Court's ability to "impartially adjudicate" this case. *Omran*, 2016 WL 5401018, at \*9–10. While harsher sanctions might be appropriate, Miller asks only to exclude Leidos's unfounded and misleading "evidence."

8

In her deposition, Zagar confirmed she lacked any personal knowledge concerning Leidos's relationships with its subcontractors, the policies by which the putative class members were paid, and Leidos' control over its subcontractors. Ex. 1. Zagar's admissions render her declaration unreliable. Zagar's declaration, Doc. 35-1, should therefore be disregarded and excluded.

**5.   CONCLUSION.**

For the reasons set forth herein, Miller respectfully requests the Court exclude Zagar's declaration, Doc. 35-1.

| | |
|---|---|
| **Dated: October 17, 2024** | Respectfully submitted, |

                                                       **BUTLER CURWOOD, PLC**

                                                       By: */s/ Zev H. Antell*
                                                           Harris D. Butler, III (VSB No. 26483)
                                                           Craig J. Curwood (VSB No. 43975)
                                                           Zev H. Antell (VSB No. 74634)
                                                           Samantha R. Galina (VSB No. 96981)
                                                      140 Virginia Street, Suite 302
                                                      Richmond, Virginia 23219
                                                     Tel: 804-648-4848
                                                     Fax: 804-237-0413
                                                     Email:
                                                     harris@butlercurwood.com
                                                     craig@butlercurwood.com
                                                     zev@butlercurwood.com
                                                     samantha@butlercurwood.com

                                                     Michael A. Josephson
                                                     Texas Bar No. 24014780
                                                     Andrew W. Dunlap
                                                     Texas Bar No. 24078444
                                                     Alyssa J. White
                                                     Texas Bar No. 24073014
                                                     **JOSEPHSON DUNLAP LLP**
                                                     11 Greenway Plaza, Suite 3050
                                                     Houston, Texas 77046
                                                     Tel: (713) 352-1100
                                                     Fax: (713) 352-3300
                                                     mjosephson@mybackwages.com
                                                     adunlap@mybackwages.com
                                                     awhite@mybackwages.com

                                                     Richard J. (Rex) Burch
                                                     Texas Bar No. 24001807
                                                     **BRUCKNER BURCH PLLC**
                                                     11 Greenway Plaza, Suite 3025
                                                     Houston, Texas 77046
                                                     713-877-8788 – Telephone
                                                     713-877-8065 – Facsimile
                                                     rburch@brucknerburch.com

                                                     **ATTORNEYS IN CHARGE FOR PLAINTIFF AND PUTATIVE CLASS MEMBERS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that I served the foregoing document on all parties and/or their counsel of record via this Court's ECF electronic filing system on October 17, 2024, in accordance with the Federal Rules of Civil Procedure.

      */s/ Zev H. Antell*
      **Zev H. Antell**